DIRECTOR, DEPARTMENT OF FORESTS AND
PARKS, acting for and on behalf of State of
Maryland *v.* OLIVER BEACH IMPROVE-
MENT ASSOCIATION, INC.

[No. 26, September Term, 1970.]

*Decided October 13, 1970.*

The cause was argued before HAMMOND, C. J., and
MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Richard C. Rice, Special Assistant Attorney General,*
with whom was *Francis B. Burch, Attorney General,* on
the brief, for appellant.

*Eugene G. Ricks* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case the trial court dismissed a petition for condemnation, saying:

> "I think this is a perfect example of the capriciousness and unreasonableness and arbitrariness of our bureaucracy. And I find as a fact that it is not necessary for the Department of Forests and Parks to condemn this property."

We shall reverse this action.

The proceeding in question was brought pursuant to the grant of authority for eminent domain contained in Code (1957), Art. 66C, § 372 as amended by Chapter 36 of the Acts of 1962 and resolution of the Commission of Forests and Parks passed May 26, 1964.[1] Although the petition for condemnation was filed on March 17, 1965, it did not come on for hearing until November 20, 1969. It is obvious that there was substantial sparring between the parties in the interim.

The 5.79 acre tract sought to be condemned is owned by appellee Oliver Beach Improvement Association, Inc. It is located in Baltimore County near the end of Eastern Avenue extended, just off the Gunpowder River, abutting on what is intended to be a part of the eastern boundary of Gunpowder River Valley State Park (the Park), for which park it is desired. The General Assembly as far back as Chapter 804 of the Acts of 1959 appropriated $1,000,000.-00 for land acquisition for the Park. Subject land is but a small part of the total acreage of the Park. It is de-

---

1. Prior to the passage of Chapter 75 of the Acts of 1964, the Commission of Forests and Parks was responsible for "supervising and directing the affairs of [the] Department of Forests and Parks". By that act, effective June 1, 1964, the Commission was designated to "serve as an advisory committee to the Director of the Department" with power to "make suggestions and give notice to the Director as to the operations and administration of the Department", and the Director was charged with "the operation and conduct of the Department" being "responsible solely to the Governor". Code (1969 Suppl.), Art. 66C, § 344 now provides, "The Director is in sole and active charge of the Department, subject only to his responsibility to the Secretary of Natural Resources."

scribed as "largely wooded" and having "a small amount of marsh land on it". It is a part of what is designated as a bird sanctuary on the Park master plan.

Mr. William A. Parr, Deputy Director of the Department of Forests and Parks (the Department), testified in part as follows:

> "Well, the area to be acquired is part of an area, part of an overall area being acquired by the department as part of the Gunpowder Park, and is an area in which several streams head up. It will be used by the Gunpowder Park primarily, or for two factors; a buffer strip, and as a general recreational area for hiking, similar purposes, trails.
> * * *
> "Well, this was part of an overall study of the entire area; and actually it was laid out through study on the ground through use of aerial photographs, through use of topographic maps of the area, and was laid out for acquisition. * * *"

Examination of the plat filed reveals that the deletion of the subject parcel from the Park would cause a break in an otherwise straight boundary. The northern line of the land sought to be condemned is an existing street or road and an extension of such street.

The plans of the Department for the Park collided with the desires of the local community which had plans for the development for recreational purposes of subject land and the 3.4 acres which will remain in the tract after the condemnation. It is apparent that after the condemnation proceeding was filed substantial pressure was brought to bear in an effort to influence the Department into withdrawing the condemnation proceeding. Certain correspondence to this effect was introduced into evidence over objection.

The Director of the Department (the Director) was questioned as to a meeting which he attended on March 6, 1966, and a letter to him from Senator James A. Pine

of Baltimore County, in which it was stated, "[Y]ou promised that this suit would not be necessary as long as the property in question was used for recreational facilities." The Director did not deny the statement but said he did not recall it. There was introduced into evidence a letter from the Director to Senator Pine dated August 22, 1966, which read as follows:

"DEPARTMENT OF FORESTS AND PARKS

August 22, 1966

Honorable James A. Pine
Senator, Senate of Maryland
24 West Pennsylvania Avenue
Towson, Maryland 21013

Dear Senator Pine:

Thank you for your letters of August 1 and August 18, 1966, concerning the condemnation suit now pending to acquire a portion of the property owned by the Oliver Beach Improvement Association, Inc.

Following our discussions during the last session of the General Assembly, no action has been taken to resolve this purchase or to drop the suit, pending the completion of other cases on adjacent property now before the courts. After the completion of these cases, hopefully by early fall, the Department of Forests and Parks can then determine the final disposition of this case. Until then, I believe the best course of action is to continue the present status of the case, and to leave the suit pending.

This position was pointed out to the Oliver Beach Association in my letter dated April 13, 1966. I thought my reasons for requesting a postponement of the suit, in lieu of requesting a dismissal, were clear and were understood by the Association. However, I will again advise the Association of this Department's position and

that the continuation is not only in the best interest of the State, but of the Association as well.

Sincerely,
SPENCER P. ELLIS,
Director.

SPE: jh"

Pursuant to the provisions of Code (1957), Art. 35, § 9, the Director was called as a witness by the property owner. At one point the record on cross-examination of him is as follows:

"Q. Did you at any time, after you obtained the authority by law to institute condemnation cases, revoke that resolution? A. I have no power to revoke a resolution of the Commission, so I did not.

"Q. By whom were you invited to attend this meeting? A. By Senator Pine, I believe, possibly by letter from the association; I don't recall exactly.

"Q. Did you have the authority at that time to terminate the condemnation proceeding? A. Yes.

"Q. Did you tell this group that you were? A. I don't recall exactly what I told them, I cannot swear to my words that day.

"Q. But, in any event, it is the position of the Department of Forests and Parks, at least today, to continue this condemnation case? A. It is, sir."

No other correspondence from the Director is before us nor did any other person testify relative to the meeting in question. Over objection the corresponding secretary of the property owner was asked:

"Since the meeting of March 6th, 1966, and relying on the understanding that you received from Mr. Ellis, his verbal statement, what, if

anything, has the Oliver Beach Improvement Association done in respect to the development of the property that is sought to be acquired by the State?"

She replied:

"We have affiliated with the Department of Recreation and Parks of Baltimore County; we at present have a fund [sic] center every Friday night in the building; we have a majorette group; we have an arts and crafts class, which was discontinued for the present; we had a summer playground; the [Baltimore County] Department of Recreation and Parks has put in a picnic area; * * *. We have surveyed the property in question, and have marked trees that we would like to cut down. We have talked to the Baltimore County Recreation and Parks, and they said if possibly we could clear some of this land they could help put in a ball diamond, that they don't have the funds to clear it and fill it. We have some fill dirt on the premises. And we have tried on several occasions to have someone knock these trees down, but we don't have a lot of money, and we're trying to get it done at a low cost, or gratis, and it's a pretty hard job."

She testified that there were approximately 680 school children in the Oliver Beach area in addition to "the preschool children".

It is not at all unusual for the exercise of the power of eminent domain to run counter to local desires. It is not every public improvement by way of building, park, road or otherwise which receives unanimous local approval. In *Murphy v. State Roads Comm'n.*, 159 Md. 7, 149 A. 566 (1930), extensive litigation took place as to the location of what travelers to certain of the resorts know today as Maryland Route 404 in Caroline County on the east side of Denton. There were strong contentions that other

routes would be better routes. Judge Offutt said for the Court:

> "Ordinarily the question of whether a proposed highway is required by public necessity is legislative rather than judicial (*Elliott on Roads and Streets*, sec. 213; *Nichols on Eminent Domain*, secs. 333, 334); and while the question as to whether the proposed use is public in its nature may ultimately become a judicial one (*Ibid.*, sec. 52; *Van Witsen v. Gutman*, 79 Md. 405), when the Legislature has determined that a proposed improvement is public in its nature, the *prima facie* presumption is that the use thus declared to be public is public. *Nichols, Eminent Domain*, sec. 52. So too when the Legislature has determined that a proposed use is public in character, it may delegate, to a board, commission, or other agency, power to ascertain and determine what property is needed for that use, and the decision of such an agency as to the public necessity for taking particular property is not subject to judicial review unless its decision is so oppressive, arbitrary or unreasonable as to suggest bad faith. *Nichols, Eminent Domain*, secs. 333, 334." *Id.* at 15.

See also *Sollins v. Baltimore County*, 253 Md. 407, 252 A. 2d 819 (1969); *Kline v. City of Rockville*, 245 Md. 625, 227 A. 2d 217 (1967); and *Wash. San. Comm. v. Santorios*, 234 Md. 342, 345-6, 199 A. 2d 206 (1964).

It is noteworthy that in this case the trial judge, although stating that he found as a fact that it was not necessary for the Department to condemn the property, gave no basis for that finding with his conclusion that this was "a perfect example of the capriciousness and unreasonableness and arbitrariness of our bureaucracy", other than his comment:

> "I would think that the State Departments would encourage the people of communities to

acquire and develop, however slowly, but none-theless to develop recreational facilities for those who live in those communities. If the Department of Forests and Parks is permitted to condemn this property, it means that the residents of this community will lose all control over that which is condemned. It has been pointed out their plans, in the future, it's true, but hopefully are to clear out part of it and put up a ball diamond for the use of the kids of the neighborhood. If this condemnation is permitted they can't do it.. The reasons given behind the resolution to condemn are, in my opinion, completely frivolous.

"I trust that in the future this department and other departments of the State will encourage the type of activity of the people of the Oliver Beach Improvement Association, instead of discouraging such laudable activities. And I think it's disgraceful also that these people have been put in a position for four and a half years of not knowing what is going to happen to the recreational area which they purchased and are slowly developing for their own children and their own families, and that for four and a half years they haven't really known what to do with the portion which the Department of Forests and Parks seeks to condemn. So, I find as a fact from the testimony that the Defendant has amply met the burden of proof that the Department of Forests and Parks, in this particular instance, is acting in an arbitrary, unreasonable and capricious manner. The Defendant's motion for preliminary hearing on issue of law is granted, and the petition for condemnation is dismissed."

For authority for the procedure here followed in deciding the issue of the right to condemn as a preliminary matter see *Lustine v. State Roads Comm.*, 217 Md. 274, 278, 142 A. 2d 566 (1958).

The fact that the Director might at some point have

seemed to agree under pressure from the community to drop this condemnation proceeding, a point not proven by the evidence and yet not denied by the Director, in the absence of other evidence would not cause the decision to condemn here to amount to a decision "so oppressive, arbitrary or unreasonable as to suggest bad faith." There is not even the slightest intimation that the discretion here exercised was not honestly exercised. It is obvious that an overall plan was established. It is further obvious from an examination of the plat that the land sought to be condemned fits into the overall plan.

It is neither surprising nor unusual that a local community in a situation such as this might prefer that land be used for recreation for local children rather than as a bird sanctuary as a part of an overall State plan for park development calculated to benefit the State as a whole. Their attitude is but little different from that of the property owners in *Johnson v. Gas & Electric Co.*, 187 Md. 454, 50 A. 2d 918 (1947), who preferred an underground power line to an overhead line, or from that in *State Roads Comm. v. Franklin*, 201 Md. 549, 95 A. 2d 99 (1953), where the property owners contended that the State Roads Commission should not be permitted to condemn for future expressway construction when only one lane was being built at the time. Furthermore, both of those situations and the current situation are but little, if any, different from that in *Murphy* where there were strong contentions by local interests as to what they regarded as better locations for the proposed highway. However valid and reasonable such contentions of local interests may appear in the realm of the political, they fall far short of legally establishing bad faith. If local residents were to be permitted to substitute their desires for the overall plan of the sovereign authority for any given tract of land sought to be condemned, however worthwhile their desires might be, the construction of public improvements would become most difficult.

We conclude that the land acquisition here sought is reasonable under the circumstances. We fail to find evi-

dence that the action of the condemning authority is so oppressive, arbitrary or unreasonable as to suggest bad faith.

Since the proceeding was dismissed on a preliminary motion relative to necessity and prior to the convening of a jury to value the property, it will be necessary upon the remand for a jury to be impaneled.

*Order reversed and case remanded for further proceedings; appellee to pay the costs.*