FREE STATE REALTY COMPANY, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 1064, September Term, 1975.]

*Decided June 9, 1976.*

---

The cause was argued before POWERS and MENCHINE, JJ., and RICHARD M. POLLITT, Associate Judge of the First Judicial Circuit, specially assigned.

*Jay Fred Cohen* for appellant.

*Richard K. Jacobsen, Chief Solicitor,* with whom were *Benjamin L. Brown, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor* and *Harry S. Swartzwelder, Jr., Associate City Solicitor,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Purporting to act pursuant to the provisions of Article 21 of the Annotated Code of Maryland, Title "Real Property," Subtitle XII [1] "Eminent Domain," the Mayor and City Council of Baltimore (Condemnor or City) filed a condemnation petition for the property known as 2526 W. Franklin Street, in the City of Baltimore, against Free State Realty Company, a body corporate (property owner). The petition alleged, *inter alia,* that the subject property was "to be acquired for urban renewal purposes, namely, 26-H Project." [2] Attached to the basic condemnation petition was a second petition for immediate possession and title under Article 4 of the Code of Public Local Laws, Subtitle 21-16, as amended by Chapter 420 of the Laws of Maryland, 1972. Property owner filed an answer resisting condemnor's claim

---

1. Subtitle XII of Article 21 is a recodification of former Article 33A except that § 3 of the former Article was omitted because of its incorporation into Maryland Rule U5.

2. A reference to Baltimore City Ordinance 152, approved June 28, 1969, pertinent parts of which will appear in this opinion, *infra.*

of entitlement to immediate possession and title, serving to bring the cause on for hearing in the Court of Common Pleas upon the issue in accordance with the statute. On July 23, 1975 the following order was passed:

> "The Court finds that it is necessary for the Petitioner, Mayor and City Council, to acquire immediate possession and title to said property interest as alleged in Paragraph Two of said Petition.
>
> "The Court specifically finds that the necessity for the taking of such immediate possession of and title to said property is not due to any substantial fault or neglect on the part of the Petitioner.
>
> "Relief prayed by Petitioner is hereby granted."

On appeal, property owner broadly attacks as unconstitutional the power of the Mayor and City Council of Baltimore to condemn in the circumstances of the subject case, as well as the form and sufficiency of the action itself.

We see no constitutional, statutory or procedural deficit.

### Constitutional and Statutory Authority

The constitutional base supporting the subject action is to be found in Article XI-B of the Maryland Constitution. In appropriate part it reads as follows:

> "SECTION 1. AUTHORITY TO BALTIMORE CITY TO ACQUIRE AND DISPOSE OF PROPERTY.
>
> The General Assembly of Maryland, by public local law, may authorize and empower the Mayor and City Council of Baltimore:
>
> (a) To acquire, within the boundary lines of Baltimore City, land and property of every kind, and any right, interest, franchise, easement or privilege therein, by purchase, lease, gift, condemnation or any other legal means, *for development or redevelopment, including, but not*

*limited to, the comprehensive renovation or rehabilitation thereof;* and

\* \* \*

"All land or property needed, or taken by the exercise of the power of eminent domain, by the Mayor and City Council of Baltimore for any of the aforementioned purposes or in connection with the exercise of any of the powers which may be granted to the Mayor and City Council of Baltimore pursuant to this Article is hereby declared to be needed or taken for a public use.

"SECTION 2. ADDITIONAL POWERS AND RESTRICTIONS.

The General Assembly of Maryland may grant to the Mayor and City Council of Baltimore any and all additional power and authority necessary or proper to carry into full force and effect any and all of the specific powers which the General Assembly is authorized to grant to the Mayor and City Council of Baltimore pursuant to this Article and to fully accomplish any and all of the purposes and objects contemplated by the provisions of this Article, provided such additional power or authority is not inconsistent with the terms and provisions of this Article or with any other provision or provisions of the Constitution of Maryland. The General Assembly may place such other and further restrictions or limitations on the exercise of any of the powers which it may grant to the Mayor and City Council of Baltimore under the provisions of this Article as it may deem proper and expedient." (Emphasis supplied.)

The breadth of scope of Maryland Constitution Article XI-B, in its present form was commented upon in *Master Royalties v. Baltimore City,* 235 Md. 74, 200 A. 2d 652 (1964), the Court declaring that it embodies "a broader concept of public use, and it is clear that under the express language

... the powers of eminent domain may be exercised by the City (if authorized by the General Assembly) to acquire property for redevelopment...." (at 84 [657]) The Court added, at the same page: "Such provisions of the State Constitution could not be unconstitutional unless they were in conflict in some way with the Federal Constitution...."

The Court in *Master Royalties, supra,* after discussing Federal due process and equal protection aspects of condemnations for area development or redevelopment found no constitutional deficit in the proceedings there under consideration.

The holding in *Master Royalties,* there dealing with a particular urban renewal plan designed for rehabilitation of a "slum blighted or deteriorated area," was that the taking was for a public purpose and that it was unnecessary to "condemn all at once."

The Legislature, in the exercise of the power and authority conferred upon it, granted certain powers of condemnation to the Mayor and City Council of Baltimore by statutes now codified as Article II, § 15 Charter of Baltimore City (1964 Revision). Section 21-16 of the Code of Public Local Laws of Baltimore City (1969) (as amended by Ch. 420 (Acts of 1972)) provided the authority to utilize "quick take" procedures.

These statutes, in parts here pertinent, read as follows:

### Article II, § 15

"The Mayor and City Council of Baltimore shall have full power and authority ...

(a) To acquire, within the boundary lines of Baltimore City, land and property of every kind, and any right, interest, franchise, easement or privilege therein, including land or property and any right or interest therein already devoted to public use, by purchase, lease, gift, condemnation or any other legal means, for development or redevelopment, including but not limited to, the comprehensive renovation or rehabilitation

thereof; provided, however that any land or property owned by the State of Maryland or the Housing Authority of Baltimore City shall not be acquired by the Mayor and City Council of Baltimore without the prior consent of the State or the Housing Authority of Baltimore City, as the case may be;

(b) To develop or redevelop, including but not limited to, the comprehensive renovation or rehabilitation of, any and all land or property acquired by any of the methods hereinbefore mentioned.

\* \* \*

(g) To vest jurisdiction or authority to exercise or perform all or any part of the aforegoing powers in any suitable board, commission, department, bureau or other agency of the Mayor and City Council of Baltimore now in being or in any new board, commission, department, bureau or agency of the Mayor and City Council of Baltimore, which it is hereby empowered to create and establish for such purposes; . . . ."

### Section 21-16, As Amended

"21-16. *Condemnation; immediate taking.*

(a) *Petition for immediate possession.*

Whenever any proceedings are instituted under Article 33A [now 21] of the Code of Public General Laws of the State of Maryland by the Mayor and City Council of Baltimore for the acquisition of any property for any public purpose whatsoever, the Mayor and City Council of Baltimore, simultaneously with the filing of said proceedings or at any time thereafter, may file a Petition under oath stating that it is necessary for the City to have immediate possession of or immediate title to, and possession of said property, and the reasons

therefore, and that the necessity for immediate taking is not because of any substantial fault or neglect of the City. The City shall also set forth in said Petition for Immediate Taking of possession or immediate taking of title the amount it estimates to be the fair value of the said property and/or title to be acquired, and of the respective interests of each of the owners thereof if more than one, which shall be substantiated by the Affidavits of two qualified appraisers, attached to said Petition. The City shall deposit into Court simultaneously with the filing of said Petition the amount of said estimate of the fair value of the property to be acquired.

(b) Upon the filing of any such Petition for Immediate Taking of possession, the Court may direct the City to give such notice to the Defendants as the Court may deem proper. The Court may set the matter for hearing on the Petition, but any such hearing shall be held within seven days from the date of the filing of such Petition; otherwise, the Court shall act on said Petition exparte within said seven day period.

(c) In cases where the City files a Petition for immediate taking of title and possession to the said property in fee simple absolute or such lesser estate or interest as is specified in the Petition, possession and title thereto shall irrevocably vest in the Mayor and City Council of Baltimore ten days after personal service of the petition upon each and every defendant unless the Defendants or any of them shall file an answer to the Petition within the said ten day period alleging that the City does not have the right or power to condemn title to the property. In the event that the defendants or any of them should file an answer, the court shall schedule a hearing within fifteen days of the date of the filing of an answer, which hearing shall be only for the purpose of contesting the right or power of the City to condemn title to the property. The trial court

shall render its decision within fifteen days from the final day of said hearing. The City or the defendants or any of them shall have an immediate right of appeal to the Court of Appeals of Maryland from the decision of the trial court."

In implementation of the powers thus conferred upon it, the Mayor and City Council of Baltimore enacted Ordinance 152, approved June 28, 1968. Among the legislative Findings and Declaration of Necessity set forth in § 20 of Ordinance 152 is included the following:

## "DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

### *Findings and Declarations of Necessity*

Sec. 20. (a) It is hereby found and determined: (1) that there exist within the City of Baltimore slum, blighted, deteriorated, or deteriorating areas, which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and general welfare of the residents of the City of Baltimore; (2) that the existence of such areas and the growth and spread thereof and the deterioration or threatened deterioration of other areas (i) contribute substantially and increasingly to the spread of disease and crime, and to losses by fire and accident; (ii) necessitate expensive and disproportionate expenditures of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, and punishment, for the treatment of juvenile delinquency, for the maintenance of adequate police, fire, and accident protection, and for other public services and facilities; (iii) constitute an economic and social liability; (iv) substantially impair or arrest the sound growth of the community; (v) retard the provision of decent, safe, and sanitary housing accommodations; (vi) aggravate traffic problems and substantially

impair or arrest the elimination of traffic hazards and the improvement of traffic facilities; (vii) depreciate assessable values; (viii) cause an abnormal exodus of families from the city; and (ix) are detrimental to the health, the wellbeing and the dignity of many of the residents of the City of Baltimore; (3) that such areas cannot be dealt with effectively by the ordinary operations of private enterprise without the aids herein provided: (4) *that the rehabilitation or elimination, in whole or in part, of slum, blighted, deteriorated, and deteriorating areas and the prevention of the spread or development of blight in, and the deterioration of, areas which are free of blight are public uses and purposes requiring the exercise of the governmental powers of the City of Baltimore in the public interest.*

(b) It is further found and declared that some slum or blighted or deteriorated areas, or portions thereof, may require comprehensive acquisition, clearance, and disposition with or without prior development or redevelopment, since the prevailing conditions of decay may make impracticable the reclamation of the area by conservation or rehabilitation; *that some such areas or portions thereof and some deteriorating areas or portions thereof may be susceptible of conservation or rehabilitation in such a manner that the conditions and evils hereinbefore enumerated may be eliminated, remedied, or prevented without comprehensive acquisition and clearance; that other areas not yet deteriorated or deteriorating, or portions thereof, may be conserved so that the conditions and evils hereinbefore enumerated may be prevented from spreading thereto or arising therein;* and that all such areas within the boundaries of the City of Baltimore may be benefited through the enforcement of applicable regulatory codes relating to buildings, housing,

sanitation or safety, the rendering of services to community organizations or through a combination of other means provided in this ordinance." (Emphasis supplied.)

The Ordinance in § 21 provided for a Department of Housing and Community Development and a Commissioner of Housing and Community Development and in § 26 (H) authorized condemnation proceedings for the purposes for which the condemnor acted in the subject proceedings. Section 26 (H) reads as follows:

"(H) Subject to the prior approval of the Board of Estimates, to acquire, for and on behalf of the Mayor and City Council of Baltimore, any single family or multiple family dwelling unit or other structure within the boundary lines of Baltimore City, by purchase, lease, condemnation, gift or other legal means, for development and redevelopment, including but not limited to the renovation, rehabilitation and disposition thereof, when the Commissioner has determined: (i) that such dwelling unit or other structure has deteriorated to such extent as to constitute a serious and growing menace to the public health, safety and welfare; (ii) that such dwelling unit or other structure is likely to continue to deteriorate unless corrected; (iii) that the continued deterioration of such dwelling unit or other structure may contribute to the blighting or deterioration of the area immediately surrounding the said dwelling unit or other structure; and (iv) that the owner of such dwelling unit or other structure has failed to correct the deterioration thereof."

We think that condemnation of individual private properties to prevent damaging blight is as well within the police power of the City of Baltimore (where authorized by the General Assembly) as is the condemnation of *all*

*property* for removal and renewal in an area that blight has destroyed.

We find very persuasive here the language used in *Romeo v. Cranston Redevelopment Agency*, 254 A. 2d 426 (R.I. 1960), at 433:

> "So, too, we believe that the redevelopment of an arrested blighted area is a device somewhat akin to the surgeon's scalpel. As the surgeon wields his scalpel to prevent a condition from further imperiling the well-being of his patient, a redevelopment agency may initiate a project in an arrested blighted area which may be compared to preventive surgery. As the doctor is concerned with the revitalization of his patient, the redevelopment agency's goal is the revitalization of the community."

We believe that Ordinance 152 sufficiently indicated a public purpose and that § 26 (H) thereof set up adequate standards to guide the Department of Housing and Community Development, the Commissioner and the Board of Estimates in exercising the powers thereby conferred. *Masters Royalties v. Baltimore City, supra,* at 86 [658]; *Herzinger v. City of Baltimore*, 203 Md. 49, 98 A. 2d 87 (1953).

### Form and Sufficiency

It will have been observed that § 21-16, authorizing a "quick take," required that the petition shall state under oath "the reasons therefore and that the necessity for immediate taking is not because of any substantial fault or neglect of the City."

Appellant suggests that because the section is codified within a code bearing a subtitle "Streets, Bridges and Highways," subheading "Opening and Maintaining Streets," the within petition must fail because "The Petition . . . and Affidavit do not in any way deal with streets, bridges and highways and the opening and maintaining of them."

We find the contention without merit. The section itself explicitly provides that it has application to " . . . any proceedings . . . for the acquisition of any property for any public purpose whatsoever."

The trial judge found that "the necessity for the taking of such immediate possession of and title to said property is not due to any substantial fault or neglect on the part of [the City]."

The record shows that all statutory conditions precedent to condemnation have been met. We perceive no error.

*Order affirmed.*
*Costs to be paid by appellant.*