## FREE STATE REALTY COMPANY, INC. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[No. 71, September Term, 1976.]

*Decided March 2, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Jay Fred Cohen,* with whom was *Barry A. Cohen* on the brief, for appellant.

*Richard K. Jacobsen, Chief Assistant Solicitor,* with whom were *Benjamin L. Brown, City Solicitor, Ambrose T. Hartman, Deputy City Solicitor,* and *James B. Murphy, Assistant City Solicitor,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here reject the contentions of Free State Realty Company, Inc. (Free State), that appellee, Mayor and City Council of Baltimore (the City), improperly or unlawfully exercised its "quick take" powers of eminent domain. Thus, we shall affirm the decision of the Court of Special Appeals in *Free State Realty v. City of Balto.,* 32 Md. App. 11, 359 A. 2d 94 (1976).

Stripped of their excess verbiage, the contentions of Free State may be summarized as: (1) the City was without authority to acquire the property in question; (2) a corollary or subsidiary portion of the argument on the previous question, that the ordinance of the City, to which we shall later make reference, "does not set forth proper standards, controls or guidelines, nor has the administrative agency

been given the authority or taken the initiative to issue regulations setting forth standards, controls or guidelines for the improvisation of the Ordinance"; (3) that the taking was not for a public use; and (4) that the City failed to establish its right to proceed under the "quick take" provisions of the statutes relative to eminent domain.

The action began with the filing of a petition by the City to condemn the leasehold property at 2526 West Franklin Street "for urban renewal purposes, namely, 26-H Project," reciting the authority of Ordinance No. 152, approved June 28, 1968. On the same day it filed a petition for immediate possession paying into court an amount equal to the estimated fair market value of the property in question. It said immediate possession was necessary "as appears from the affidavit of Jerome M. Katz, Land Acquisition Officer, Department of Housing and Community Development, attached [t]hereto and prayed to be taken as a part [t]hereof." The relief sought was said to be "subject to the provisions of Article 4 of the Code of Public Local Laws of Baltimore City (1969 Edition), Subtitle 21-16 as amended by Chapter 420 of the Laws of Maryland approved May 26, 1972."

The affidavit of Mr. Katz said that the dwelling at 2526 West Franklin Street "ha[d] deteriorated to such extent as to constitute a serious and growing menace to the public health, safety and welfare," which was "likely to continue to deteriorate unless corrected, and [that] such continued deterioration m[ight] contribute to the blighting or deterioration of the immediately surrounding area thereto." It further recited that the owner had "failed to correct the deterioration thereof as evidenced by the violation notice(s) attached . . . ."

Free State's answer denied "the legal right of the Mayor and City Council to take this property under eminent domain and particularly . . . [the] immediate possession and title because it has not at any time alleged a public purpose by law, statute or ordinance"; that "it was inappropriate and illegal for the City of Baltimore to attempt to seize this property under its Exhibit A, a violation notice which the

City employees [sic] in other Courts and matters regularly"; that the particular notice "was barred at the time of its use by the City under Article 53, Section 44, of the General Laws of Maryland," (which provides that the District Court shall have civil jurisdiction "in all cases of violations of the Building and Electrical Code" of Baltimore City); that "[t]here is no ordinance or statute . . . which enables the City of Baltimore to buy this property under eminent domain for a public purpose"; and that "Chapter 420 . . . is unconstitutional in that it violates the Maryland Constitution under the Sections relating to local legislation." Had Free State not denied the right to condemn and the right of immediate possession in its answer, this would have have been deemed admitted. Maryland Rule U 9 b.

Utilizing the authority of Rule 502 and the procedure mentioned in *Director v. Oliver Beach Imp. Ass'n*, 259 Md. 183, 190, 269 A. 2d 615 (1970), and approved by this Court in *Potomac Power Co. v. Birkett*, 217 Md. 476, 482, 143 A. 2d 485 (1958), the trial court considered the right to condemn and the right to immediate possession as a preliminary matter. At that time a building inspector testified that when he visited the subject property on September 3, 1974, he observed that "[w]indows and doors were broken," there "was rubbish and debris inside," "the house was vacant" and "the grounds were unsanitary." Another employee of the City's Department of Housing and Community Development said that under date of September 25, 1974, the City had boarded up and cleaned up the property, but that when he last visited the property on July 13, 1975, three days before the hearing on the petition, there had been no effort made to rehabilitate the dwelling. The author of the affidavit attached to the petition for immediate possession testified that the City sought to acquire the property "because it was reported as a poor condition, blighted property," invoking the authority of Ordinance No. 152, § 26 (h) approved June 28, 1968. He stated that the Housing Commissioner sought approval of the Board of Estimates of Baltimore City to condemn this property for the reasons stated under the provisions of the previously mentioned ordinance. A copy of

the letter to the Board of Estimates was filed as an exhibit in the proceeding. The letter said that the Housing Commissioner "ha[d], along with members of [his] staff, inspected the properties listed above, and . . . certif[ied] that said properties [did] meet the . . . requirements" of Ordinance No. 152, § 26 (h). A certified copy of the resolution of the Board of Estimates authorizing the acquisition was filed as an exhibit in the proceeding.

The trial judge (Murphy, J.) passed an order in which he found "that it [was] necessary for the [City] to acquire immediate possession and title to said property interest . . . ." He "specifically f[ound] that the necessity for the taking of such immediate possession of and title to said property is not due to any substantial fault or neglect on the part of the [City]." Free State appealed to the Court of Special Appeals, which affirmed. We granted the writ of certiorari in order that we might consider the questions raised by Free State's petition.

## 1. Constitutional and statutory authority

Maryland Constitution art. XI-B, § 1 authorizes the General Assembly "by public local law" to "authorize and empower the Mayor and City Council of Baltimore" under the power of eminent domain to acquire land "for development or redevelopment, including, but not limited to, the comprehensive renovation or rehabilitation thereof . . . ." As Chief Judge Brune pointed out for the Court in *Master Royalties v. Balto. City,* 235 Md. 74, 80-81, 200 A. 2d 652 (1964), the General Assembly by Chapter 217 of the Acts of 1949 implemented the provisions of Constitution art. XI-B, § 1. Constitution art. III, § 40A provides that "where . . . property is situated in Baltimore City and is desired . . . by the Mayor and City Council of Baltimore, the General Assembly may provide that such property may be taken immediately upon payment therefor to the owner or owners thereof . . . by the Mayor and City Council of Baltimore, or into court, such amount as . . . the Mayor and City Council of Baltimore . . . shall estimate to be the fair value of said property. . . ." Code of Public Local Laws of Baltimore City

(1969 ed., art. 4 of Code of Public Local Laws of Maryland) § 21-16, as amended by Chapter 420 of the Acts of 1972, authorizes the City in filing a petition for acquisition of land by way of condemnation to obtain immediate possession upon complying with procedures with which the City here complied, all of which was set forth at length by Judge Menchine for the Court of Special Appeals in *Free State Realty*, 32 Md. App. at 15-18. The Court of Special Appeals' opinion further referred to Ordinance No. 152 of the City. Its legislative findings in § 20 (a) stated, among other things, that there existed within the City "slum, blighted, deteriorated, or deteriorating areas, which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and general welfare of the residents of the City of Baltimore...." The Court of Special Appeals emphasized that portion of the section stating:

"(4) that the rehabilitation or elimination, in whole or in part, of slum, blighted, deteriorated, and deteriorating areas and the prevention of the spread or development of blight in, and the deterioration of, areas which are free of blight are public uses and purposes requiring the exercise of the governmental powers of the City of Baltimore in the public interest."

Subsection b referred to the fact "that some slum or blighted or deteriorated areas, or portions thereof, may require comprehensive acquisition, clearance, and disposition with or without prior development or redevelopment, since the prevailing conditions of decay may make impracticable the reclamation of the area by conservation or rehabilitation ...." It then emphasized the following language:

"that some such areas or portions thereof and some deteriorating areas or portions thereof may be susceptible of conservation or rehabilitation in such a manner that the conditions and evils hereinbefore enumerated may be eliminated, remedied, or prevented without comprehensive acquisition and clearance; that other areas not yet deteriorated or

deteriorating, or portions thereof, may be conserved so that the conditions and evils hereinbefore enumerated may be prevented from spreading thereto or arising therein . . . ."

Ordinance No. 152 provides in § 26 (a) that "[t]he Department of Housing and Community Development shall have and exercise" certain power. It further provides that "[i]n addition to other powers [t]herein granted, such powers shall include but shall not be limited to the following," after which a number of subsections, including subsection (h), are set forth. It provides:

"Subject to the prior approval of the Board of Estimates, to acquire, for and on behalf of the Mayor and City Council of Baltimore, any single family or multiple family dwelling unit or other structure within the boundary lines of Baltimore City, by purchase, lease, condemnation, gift or other legal means, for development and redevelopment, including but not limited to the renovation, rehabilitation and disposition thereof, when the Commissioner has determined: (i) that such dwelling unit or other structure has deteriorated to such extent as to constitute a serious and growing menace to the public health, safety and welfare; (ii) that such dwelling unit or other structure is likely to continue to deteriorate unless corrected; (iii) that the continued deterioration of such dwelling unit or other structure may contribute to the blighting or deterioration of the area immediately surrounding the said dwelling unit or other structure; and (iv) that the owner of such dwelling unit or other structure has failed to correct the deterioration thereof."

The contention that the City was lacking in authority to acquire the subject land thus is utterly without foundation.

## 2. Guidelines

In *Herzinger v. City of Baltimore*, 203 Md. 49, 62, 98 A. 2d 87 (1953), Judge Henderson referred for the Court to a contention that the "standards and guides" set forth in the ordinance then before the Court were "so general as to be meaningless." The Court held them to be "as specific as the nature of the subject matter permits," citing *Matthaei v. Housing Authority*, 177 Md. 506, 9 A. 2d 835 (1939), where Chief Judge Bond said for the Court:

> "Discretion vested in the authority to determine facts on which action under the laws and the ordinance is to be taken is broad. But in such an undertaking this must be so. The ascertainment of sites needing to be cleared as directed, and the people to be removed and housed anew, involves determination of facts so many and so varied that an act of assembly or an ordinance could not do it in advance. 'It is competent for the State to impose upon administrative officers the duty of ascertaining specific facts upon which a prescribed application of the police power is made to depend.' *Weer v. Page*, 155 Md. 86, 92, 141 A. 518, 520 [(1928)]. The standards or guides stated in the statutes and the ordinance, or the facts to be ascertained, are made definite." *Id.* at 516.

*Herzinger* and *Matthaei* are controlling here.

## 3. Public use

In *Master Royalties*, 235 Md. at 85-86, and in *Herzinger*, 203 Md. at 60-62, our predecessors found uses under this constitutional provision similar to the uses contemplated here to be public uses. We reiterate those holdings.

## 4. Sufficiency of evidence of City's right to proceed

In *Herzinger* Judge Henderson said for the Court:

> "[W]here the authority is based upon an ordinance or other legislative enactment, it would

seem that reliance thereon would make a *prima facie* case and shift the burden to the person attacking it to show that it is arbitrary or unreasonable. In *Hoffman v. M. & C. C. of Baltimore,* 197 Md. 294, 79 A. 2d 367, 372 [(1951)], we said that an ordinance 'like other action in exercise of the police power, is presumed to be valid unless on its face or by extrinsic facts it is shown to be invalid.' In *M. & C. C. of Baltimore v. Biermann,* 187 Md. 514, 523, 50 A. 2d 804, 808 [(1947)], we said that a property owner has 'the heavy burden of overcoming the presumption of constitutionality of legislative action, even if the legislative body acted without evidence at all.' These, of course, were zoning cases, but the principle is well established." *Id.* at 63.

Nichols, *Law of Eminent Domain* § 26.1315, at 26-169 (3d rev. ed. 1976) states, "The burden of proving lack of necessity rests upon the person who objects to the proceeding on this ground." The same work in § 26.3 in discussing adjudication of the right to condemn states at pages 26-237 to 238 that the condemning authority must prove certain things and then adds "and, in such jurisdictions as treat the necessity of the use as a judicial question, that the land sought to be taken is necessary for the public use, to the extent, at least, of making out a *prima facie* case." Maryland is a jurisdiction treating the necessity of use as a judicial question. *See Prince George's Co. v. Beard,* 266 Md. 83, 95, 291 A. 2d 636 (1972), and cases there cited.

In *Murphy v. State Roads Comm'n.,* 159 Md. 7, 149 A. 566 (1930), this Court made plain that it would not be involved in determining which of several possible routes for a state highway was the better route and that "the decision of such an agency [as the State Roads Commission] as to the public necessity for taking particular property is not subject to judicial review unless its decision is so oppressive, arbitrary or unreasonable as to suggest bad faith." This holding was repeated in *Director v. Oliver Beach Imp. Ass'n,* 259 Md. 183,

189, 269 A. 2d 615 (1970); *Sollins v. Baltimore County,* 253 Md. 407, 412, 252 A. 2d 819 (1969); *Kline v. City of Rockville,* 245 Md. 625, 630, 227 A. 2d 217 (1967); and *Wash. San. Comm. v. Santorios,* 234 Md. 342, 199 A. 2d 206 (1964). In the latter case Judge Horney said for the Court:

> "When the legislature authorizes a commission or other agency to take and acquire land in fee or as an easement for a public purpose by purchase or condemnation, the selection of the land to be condemned is a matter for the commission to decide. When the taking is challenged, the questions for the court to decide are limited to (i) whether there is any necessity whatever to justify the taking, or (ii) whether the decision of the commission is so oppressive, arbitrary or un-reasonable as to suggest bad faith. *State Roads Comm. v. Franklin,* 201 Md. 549, 95 A. 2d 99 (1953); *Johnson v. Consolidated Gas, Electric Light & Power Co.,* 187 Md. 454, 50 A. 2d 918 (1947); *Murphy v. State Roads Comm.,* 159 Md. 7, 149 Atl. 566 (1930). In 1 *Nichols on Eminent Domain* (3rd ed.) § 4.11 [3], it is said:
>
>> 'The necessity is for the condemnor and not for the courts to decide, and the decision of such condemnor is final so long as it acts reasonably and in good faith. If the land is of some use to it in carrying out its public object, the degree of necessity is its own affair. Whether there is any necessity whatever to justify the taking is, however, a judicial question.'
>
> Furthermore, it has been said that the necessity for the taking does not have to be absolute: all that is required is that it be reasonable under the circumstances. *Johnson v. Consolidated Gas, Electric Light & Power Co., supra,* at p. 462 (of 187 Md.)." *Id.* at 345-46.

The Illinois Supreme Court was recently faced with a somewhat similar contention in *Trustees of Schools v. Nat. Bk.*, 49 Ill. 2d 408, 274 N.E.2d 56 (1971). It said:

> "Finally defendant attacks the necessity of the taking. . . .
>
> "Defendant is correct in his assertion that the burden of proof on the issue of necessity is upon the petitioner. *(City of Chicago v. Lehmann, 262 Ill. 468.)* However, where a resolution of the governing body which makes the finding of necessity is introduced into evidence a *prima facie* case is made. It is then the duty of the defendant to go forward with evidence in support of his contention that there was an abuse of discretion by the governing body. *(Trustees of Schools v. Sherman Heights Corp., 20 Ill. 2d 357; Chicago Land Clearance Com. v. Quinn Home Builders, 11 Ill. 2d 111; Decatur Park District v. Becker, 368 Ill. 442; Forest Preserve District v. Kean, 298 Ill. 37).* The Board of Education adopted a resolution determining that it was necessary for the best interests of the school district that this property be acquired. This resolution was introduced into evidence at the hearing on the traverse. It was then the duty of defendant to go forward with evidence in support of his contention that the taking was excessive." *Id.* at 414-15.

The record here is devoid of any allegation or implication of improper motive or purpose on the part of the City. Accordingly, we hold that the City made out a prima facie case in the evidence presented by it which establishes a sufficient basis for the City's entering into immediate possession.

*Judgment affirmed; appellant*
*to pay the costs.*