Rosenthal *vs.* Mahon, Ex'r.

(Decided 22nd June, 1886.)

---

JACOB S. ROSENTHAL *vs.* THADDEUS M. MAHON, Executor of WILLIAM J. POOL.

*Fraudulent Contract—Equity.*

Where an old man, over seventy years of age, very poor, and unable to read or write, is induced by false and fraudulent representations, to enter into a contract to give fifteen per cent. of his one-seventh interest in an estate of about $100,000, and to renounce all claim to commissions, he being entitled to letters of administration, a Court of equity will not permit the wrong-doer to reap any benefit under the contract.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by William J. Pool against Jacob S. Rosenthal. The case is stated in the opinion of this Court. The Court below (BROWN, C. J.) passed a decree requiring the defendant to pay to the complainant the sum of $2542.00, with interest from the 24th of June, 1884, and annulling and setting aside a release executed by the said complainant to the said defendant, and others as the administrators of Thomas Dorney, deceased. From this decree the defendant appealed. Subsequently William J. Pool deceased, and letters of administration upon his personal estate were granted to Thaddeus M. Mahon, and by order of the Court he was substituted as complainant in

place of the said original complainant, and it was directed that the cause should proceed accordingly.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*Julian I. Alexander,* for the appellant.

*John E. Semmes,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

There is not much in this appeal, either in its legal aspect or in any other aspect, to commend it to the favorable consideration of the Court. The facts out of which the controversy arises may be briefly stated as follows:—
Thomas Dorney, a lunatic, died in the early part of the year 1882, leaving an estate of about one hundred thousand dollars. Before his death, Rosenthal the appellant, who was his committee, made a contract with one Noah Lemmon and five other persons, claiming to be the heirs of Dorney, by the terms of which, Rosenthal was to establish their right to the estate, and in consideration of his services was to receive *fifteen per cent.* on the assessed value of the estate. In other words, they were to pay him *fifteen thousand dollars,* if he succeeded in establishing their claim to the estate.

Shortly after the execution of this contract, Dorney died, and some litigation followed as to who were his heirs and next-of-kin, which resulted however in favor of the parties represented by Rosenthal; and letters of administration on Dorney's estate were granted to Rosenthal, Caroline F. Carter, one of the distributees, and Francis Carter, her husband.

In January, 1882, a bill was filed for the sale and division of Dorney's real estate among the six distributees represented by Rosenthal. In all these proceedings the

rights of Pool, the appellee, who lived in Pennsylvania, and who was a half-brother of Noah Lemmon, and one of the heirs of Dorney, were entirely ignored. In June, however, while the bill for the sale and division of the real estate was pending, he made a visit to his half-brother, Noah Lemmon, then living in Baltimore, and while there, made some inquiry about Dorney's estate, the reply to which was very indefinite, and without the slightest intimation by Noah, of the proceedings for its sale and division between himself and others, to the exclusion of Pool. In the fall of that year, Carter, the husband of one of the distributees, and himself one of the administrators of Dorney, made a visit to Pool, in company with Mr. Cox, a lawyer of Washington. Carter told Pool, that he was one of Dorney's heirs, and as such was entitled to a one-seventh of his estate, that Noah Lemmon and others had filed a bill to divide the property among themselves, that they denied his, Pool's relationship to Dorney, and there would be great difficulty in establishing his claim to the estate. A great deal more was said, which it is unnecessary to repeat; it is sufficient to say, that Carter induced Pool to sign a contract agreeing to give him, Carter, *one-third of Pool's* share in consideration of services to be rendered by Carter, in making good Pool's claim as one of the heirs-at-law of Dorney.

Shortly after the execution of this contract, Cox, the attorney, wrote to Rosenthal, stating he represented Pool, who claimed a one-seventh interest in Dorney's estate. A petition was also filed by Cox in the Orphans' Court, asking that letters of administration on Dorney's estate be granted to Pool, as the oldest male heir, and therefore the party entitled under the law. This application was resisted by Rosenthal, and resisted too on the ground, that there was no relationship of any kind between Pool and Dorney. On the 11th December, while this application was pending before the Orphans' Court, Rosenthal, in

company with Noah Lemmon, makes a visit to Pool. What took place between them at that time, we shall not now stop to consider. One thing is certain, on the evening of that day, Rosenthal and Lemmon returned to Baltimore, and with them came Pool. On the next day, December 12th, Rosenthal appeared in the Orphans' Court, and admitted that Pool was one of the heirs of Dorney, and as such, entitled to letters of administration; in fact, he admitted everything set forth in Cox's petition to be true, all of which he had but a few days before denied. Now, what do we find next? On the same day, letters of administration on Dorney's estate were granted to Pool and Rosenthal, and at the same time a contract was signed by Pool, in which he relinquished all claim to commissions on the estate, and agreed to pay Rosenthal *fifteen per cent.* of his share of the property. Rosenthal proceeded accordingly to settle the estate, and for his services charged, and was allowed fifteen thousand dollars, the one-seventh of which $2142, was deducted from Pool's share.

In the meantime, suit was brought against Pool by Carter on the contract made with him, and which Pool, at the instance and by the advice of Rosenthal, had repudiated. After testimony had been taken, the suit was compromised by the payment of $2500 to Carter by Pool, besides which, Pool was obliged to pay $400 as counsel fee, one-half of which was received by Rosenthal. Pool, it thus appears, had paid over *five thousand dollars* for services supposed to have been rendered by Carter and Rosenthal in establishing his claim to the one-seventh of this estate, a claim about which there never was any ground for litigation, and about which there never was any contention after Rosenthal's visit to Pool. The contract with Carter is not before us in this appeal; we are now dealing with the contract between Pool and Rosenthal, and under which Rosenthal deducted $2142 from Pool's portion of the estate.

And in dealing with this contract, we deem it unnecessary to state in detail what took place between the parties when it was made. Pool was an old man, over seventy years of age, very poor, unable to read or write, and it is enough to say, that the testimony shows beyond all question, that Rosenthal knew at the time all about Pool's contract with Carter, and further, that Pool was induced to sign the agreement under which Rosenthal deducted the $2142, upon the faith of representations made by Rosenthal and Lemmon, which representations were in fact untrue. We forbear further comment on the testimony, except to say, a Court of justice will not permit one to reap a benefit under a contract made under circumstances such as this record discloses.

*Decree affirmed.*

(Decided 22nd June, 1886.)