## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* KELSO CORPORATION ET AL.

[No. 42, September Term, 1977.]

*Decided December 7, 1977.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Richard K. Jacobsen, Chief Solicitor,* with whom were *Benjamin L. Brown, City Solicitor,* and *Ambrose T. Hartman, Deputy City Solicitor,* on the brief, for appellant.

*Jonathan A. Azrael* and *Edward Azrael,* with whom were *Azrael & Gann* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This appeal arises as a result of what appellee Kelso Corporation[1] asserts was appellant Baltimore City's fraudulent invocation of the "quick take" provisions of the Code of Public Local Laws of Baltimore City, which allow the City to take immediate possession of and title to property it seeks to condemn prior to a final determination of its value. Code of Public Local Laws of Baltimore City § 21-16 (1969, 1977 Cum. Supp.) (also set out in 1972 Md. Laws, ch. 420) (authorized by Md. Const., art. III, § 40A). Since we conclude that the City's exercise of its quick-take power was authorized, and that the issue of fraud as it affects valuation must be litigated, in the circumstances present here, at the time damages are assessed, we will reverse the trial court's order voiding the taking and remand the case for a determination of the compensation to be paid by the City.

The land in question, much of which is now the site of a recently constructed Social Security Administration office building, is composed of a number of parcels located eight to ten blocks northwest of the central business district of Baltimore City. In August 1969 the property, which was zoned at the time so as to permit commercial development, was brought by Baltimore City Ordinance No. 578 within an already established Neighborhood Development Program Project. A comprehensive zoning ordinance was enacted by the city council on April 20, 1971. Baltimore City Ordinance No. 1051 (amending Baltimore City Code, Art. 30 (1966)). This ordinance changed the zoning of the Kelso land from its

---

1. The record discloses that another corporation and two individuals having some interest in the properties sought to be condemned were named as defendants in these condemnation proceedings. Because there is no dispute among them with reference to the issues here, for convenience we will refer to the group as Kelso Corporation or the appellee.

commercial status to a residential classification, thereby, it is claimed, substantially reducing its market value. Seven months later the property was specifically approved for acquisition, by either purchase or eminent domain, as part of the renewal plan for the Orchard-Biddle neighborhood of which it is a part. Baltimore City Ordinance No. 1175 (Nov. 15, 1971) (amending Baltimore City Ordinance No. 1066 (May 17, 1971)).

In October 1972 and January, February, and May of 1973, the City filed eight separate condemnation petitions against the parcels which make up the Kelso property. Then in April, May, and August of 1973 the City filed quick-take petitions against each of the parcels and deposited with the court amounts equal to the appraised value of the several tracts, as required by law. *See* Code of Public Local Laws of Baltimore City § 21-16 (a) (1969, 1977 Cum. Supp.). Within the statutorily prescribed time limit the appellee responded by filing an answer and motion to dismiss each quick-take petition. *See id.* § 21-16 (c). However, in early November 1973, before any hearing on the matter, Kelso withdrew its earlier motions to dismiss the City's quick-take petitions; on November 8, the court granted Kelso's request to be permitted to withdraw the funds deposited by the City.

Although it had collected the deposited funds, Kelso, as a result of answers it received from the City to inquiries made during discovery procedures, filed a motion on March 26, 1975, to dismiss the City's quick-take petitions and thus divest it of title and possession of the property. As the basis for this motion Kelso alleged that it was not necessary for the City to take the land and that the City had fraudulently used its zoning powers in order to deprive it of just compensation by adversely affecting the value of the real estate. According to Kelso, the property was downzoned so that it could be acquired at a depressed price (approximately two dollars per square foot being the amount deposited with the court), and then rezoned for commercial use by Baltimore City Ordinance No. 774 (Dec. 17, 1974); in this manner, the appellee urges, the City planned to profit at Kelso's expense by the sale of the land to the federal government as the site for a Social

Security Administration office building at a price of eight dollars per square foot. Based on evidence introduced at a hearing on these allegations, the Court of Common Pleas of Baltimore City, Cardin, J., accepted Kelso's contentions and entered an order granting its motion to divest the City of possession and title to the property. The City appealed to the Court of Special Appeals and we granted certiorari before consideration of the matter by that court.[2]

The principle which governs our determination to void the trial court's decision upholding Kelso's attack on the City's use of the quick-take procedure — a ruling rendered almost three years after the City entered into possession — is a simple one, and may be gleaned from a perusal of the statutory provisions controlling the immediate taking of property by the City:

> (a) Whenever any proceedings are instituted ... by the Mayor and City Council of Baltimore for the acquisition of any property for any public purpose whatsoever, the [City] ... may file a Petition under oath stating that it is necessary for the City to have immediate possession of or immediate title to, and possession of said property, and the reasons therefor.
>
> * * *
>
> (c) In cases where the City files a Petition for immediate taking ... *possession and title thereto shall irrevocably vest* in the Mayor and City Council of Baltimore ten days after personal service of the petition upon [the property owner] *unless [the owner] shall file an answer*... within the ... ten day period *alleging that the City does not have the right or power to condemn title* to the property. . . . [Code

---

2. Though the appellee has moved to dismiss this appeal as premature, it is obvious that it is properly before this Court. The appellants have a right of appeal under section 12-303 (a) of the Courts Article, Md. Code (1974, 1977 Cum.Supp.) (appeal from interlocutory order with regard to possession of property), and possibly under section 21-16 (c) of the Code of Public Local Laws of Baltimore City (1969, 1977 Cum. Supp.), the statute involved here.

of Public Local Laws of Baltimore City § 21-16 (1969, 1977 Cum. Supp.) (emphasis added).]

These sections make clear that, unless the "right or power to condemn title" is challenged, if the City has complied with the procedural requirements of section 21-16 a property owner has no basis for attacking the immediate taking of his property under the statute.[3] Since Kelso has never contended that the City did not comply with the formal requirements mandated by section 21-16 (a),[4] and has repeatedly emphasized that it does not dispute the City's right and power to condemn, title and possession vested in the City ten days after Kelso withdrew its original answer and objection to the quick-take petitions, and may not now be attacked.[5] Kelso's motion to strike the court's orders granting immediate title and possession to the City was therefore inappropriate, and the trial court erred in granting it.

Though the appellee is prohibited from proceeding in the manner attempted here, our ruling does not mean that it may not, upon a proper showing, otherwise reach its real objective — not ownership of, but just compensation for, the property taken based on a commercial zoning classification. As Kelso itself notes in its brief, the thrust of its attack was "directed at the City's use of quick-take procedures . . . to carve out a date of taking when the value of the . . . properties was frozen

3. To the extent that Free State Realty v. City of Balto., 279 Md. 550, 557-60, 369 A. 2d 1030, 1034-35 (1977), may be read to suggest that use of quick-take procedures by Baltimore City can be challenged on grounds other than facial non-compliance with the statutorily mandated requirements or lack of power to condemn, such a suggestion was not intended and we reject it.

4. Where the requirements are complied with on their face, as, for example, with a statement of the reasons for the necessity for immediate possession, the court will make no further inquiry. See Segall v. City of Baltimore, 273 Md. 647, 331 A. 2d 298 (1975) (per curiam).

5. Although the appellee in November 1973 withdrew its early objection to the City's right and power to condemn, so that no hearing was held on the issue, there is no doubt that the City had such power. The statutory basis for its condemnation power, Baltimore City Ordinance No. 1175 (Nov. 15, 1971), meets the constitutional requirement that the power to condemn can only be exercised for a public use, since the uses contemplated by that ordinance are similar to those found constitutional by this Court on several occasions. See Free State Realty v. City of Balto., 279 Md. 550, 557, 369 A. 2d 1030, 1034 (1977); Master Royalties v. Balto. City, 235 Md. 74, 84-86, 200 A. 2d 652, 657-58 (1964); Herzinger v. City of Baltimore, 203 Md. 49, 59-62, 98 A. 2d 87, 91-93 (1953).

and depressed by reason of down-zoning in advance of condemnation." By proceeding as it did, Kelso states, it was simply attempting to establish a new date of taking for purposes of valuation.

While it is clear that the date of taking here occurred in early November 1973, *see* Md. Code (1974), § 12-102 (1) of the Real Property Article,[6] and that normally "the value of the property . . . shall be determined as of the date of the taking," *id.* § 12-103, this valuation date is not immutable. Since no one will be permitted to benefit by his own fraudulent action, *see Bowie v. Ford,* 269 Md. 111, 119, 304 A. 2d 803, 808-09 (1973); *Rosenthal v. Mahon,* 65 Md. 418, 422, 5 A. 246, 248 (1886); *cf. Figinski v. Modrak,* 151 Md. 140, 146, 134 A. 130, 132 (1926), if Kelso is able to show that the City through fraud manipulated the date of valuation to Kelso's detriment, the court can remedy the injustice by ignoring the statutory date and allowing the jury to consider such factors as will allow the property owner to receive just compensation free of any effect of the fraudulent device. This is so because the date of valuation set by statute cannot be used to deprive a property owner of the just compensation he is entitled to receive under sections 40 and 40A of Article III, and section 1 of Article XI-B of the Maryland Constitution. Support for this proposition is found in the decision of this Court in *Carl M. Freeman, Inc. v. St. Rds. Comm'n,* 252 Md. 319, 329-30, 250 A. 2d 250, 255 (1969), where Judge Finan, speaking for the Court, stated:

> [I]n a case where the direct and sole purpose of the ordinance is to depress property values, . . . we must weigh the public purpose sought to be advanced and the means taken to achieve it, in light of the constitutional right of the property owner to receive

---

**6.** Section 12-102 (1) reads:

In this title, property is deemed to be taken:
(1) If the plaintiff lawfully is authorized to take the property before trial pursuant to Article III of the Constitution of the state, or any amendment to it, and the required payment has been made to the defendant or into court, any required security has been given, and the plaintiff has taken possession of the property and actually and lawfully appropriated it to the public purposes of the plaintiff.

just compensation for his property taken by eminent domain. In such a situation the Walls of Jericho must fall and the property owner be permitted to defend himself against the ordinance. The ordinance is directly involved and is directly impinging upon one of his constitutional guarantees. The property owner must be protected from prejudicial evidence as to value based on restrictions on the use of his property unconstitutionally impressed as part of a design to freeze or depress its value. To hold otherwise is to deprive him of the opportunity to receive just compensation for his property guaranteed by section 40 of Article III of the Constitution of Maryland.

In fact, the City recognizes, as it must, that under this Court's decisions it cannot use zoning to depress land values so as to reduce the damages paid by the sovereign when it otherwise validly invokes its power to condemn. *Arnold v. Prince George's Co.*, 270 Md. 285, 294-95, 311 A. 2d 223, 228-29 (1973); *Hoyert v. Bd. of County Comm'rs*, 262 Md. 667, 672-74, 278 A. 2d 588, 591-92 (1971); *Carl M. Freeman, Inc. v. St. Rds. Comm'n, supra; Krieger v. Planning Commission,* 224 Md. 320, 323-24, 167 A. 2d 885, 887 (1961) (dictum) (stating rule); *Cong. School v. Roads Commission,* 218 Md. 236, 241, 146 A. 2d 558, 560 (1958) (dictum) (same). We also observe that even if Kelso cannot establish a fraudulent intent to depress the value of the property, it will still be entitled to show, if it can, the probability that the land would be rezoned within a reasonable time after the condemnation, as well as evidence as to the effect of such a probability upon the property's value at the time of the taking. *E.g., Shell Oil Co. v. Supervisor,* 278 Md. 659, 665-66, 366 A. 2d 369, 373 (1976) (citation of authorities); *State Roads Comm. v. Orleans,* 239 Md. 368, 379, 211 A. 2d 715, 722-23 (1965); *State Roads Comm. v. Warriner,* 211 Md. 480, 489, 128 A. 2d 248, 251-52 (1957).

For these reasons, we vacate the order of the Court of Common Pleas of Baltimore City granting Kelso's motion to strike orders giving immediate possession and title to the

City, and remand the case to that court for a determination of the just compensation to be paid for the taking.

> *Order of the Court of Common Pleas of Baltimore City dated October 29, 1976, vacated and case remanded to that court for further proceedings to determine the amount of compensation to be paid by Baltimore City for the land taken.*
> *Costs to be paid by the appellees.*