KELSO CORPORATION *v.* MAYOR AND CITY
COUNCIL OF BALTIMORE

[No. 403, September Term, 1979.]

*Decided March 6, 1980.*

-The cause was argued before GILBERT, C. J., and MOYLAN and MELVIN, JJ.

*Richard D. Rosenthal* for appellant.

*Richard K. Jacobsen, Chief Solicitor for Baltimore City,* with whom were *Benjamin L. Brown, City Solicitor,* and *William Hughes, Associate City Solicitor,* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

On March 14, 1978, the Mayor and City Council of

Baltimore (City) filed in the Court of Common Pleas a condemnation petition for property owned by Kelso Corporation (Kelso), the appellant. The property consisted of five unimproved lots known as 609, 611, 613, 615 and 617 W. Saratoga Street in Baltimore. The petition alleged, *inter alia,* that the property was "to be acquired for Urban Renewal Purposes, namely, CDBG-I, Orchard-Biddle Site" and cited Ordinance No. 32, approved April 10, 1972, as the City's authority to acquire the property. The City also filed on March 14, 1978, a second petition for immediate possession and title, purporting to act pursuant to the City's "quick take" condemnation procedures provided by Section 12-16 of the Code of Public Laws of Baltimore City (1969 ed., 1977 cum. supp.).

On the same day the two petitions were filed, March 14, 1978, the court passed an order that

1.) Ordered that the City be vested with *possession* of Kelso's property; and

2.) Ordered that *title* to the property "shall vest" in the City "ten (10) days after personal service" upon Kelso of the quick take petition and "this Order."

The order further provided that the "vesting of such possession or title and possession in the . . . [City] shall in nowise act as a bar to trial of this matter to determine the fair value . . . [of the property] in accordance with the applicable provisions of law applicable thereto."

The record shows that copies of the two petitions and the March 14th order were served on Kelso on April 17, 1978 and that on April 24, 1978, Kelso filed an "Answer to Petition for Immediate Possession and Title and Motion to Vacate Order." The answer alleged, for various reasons, that the City "lacks the power and/or right to condemn *title* to the properties in question." The answer prayed that the quick take petition be dismissed and that the March 14th order be vacated. The answer also alleged that it was "not necessary for the . . . [City] to acquire possession and/or title to the properties. . . ." There is an indication in the record that a hearing on the

petition and answer was scheduled for June 20, 1978, but was postponed for reasons unrevealed by the record. The hearing was finally held on January 19, 1979, after which the court passed an order, filed February 2, 1979, denying the relief requested. In a shotgun like attack, the appellant contends here that the court below erred. As we point out, *infra,* we agree that the order of February 2, 1979 needs to be modified, but as modified we shall affirm it; otherwise, the various reasons urged for reversal and our reasons for finding them to be without merit follow.

I

Appellant contends that various alleged procedural defects "renders the petition for immediate possession and title invalid."

(1)

Appellant first contends that it was not given an opportunity to accompany the City's appraisers during their inspection of the property. Real Property Article, Title 12, Eminent Domain, of the Md. Code, § 12-207, provides that "[i]f a public agency acquires land, it shall be guided to the greatest extent feasible by the policies set forth in this section." Among the *policies* set forth are that the agency "shall make every reasonable effort to acquire expeditiously land by negotiation" (§ 12-207 (b)), and that "[l]and shall be appraised before the initiation of negotiations, and the owner ... shall be given an opportunity to accompany the appraiser during his inspection of the property." (§ 12-207 (c)).

In the instant case, the two managing officers of the appellant both testified, without contradiction, that no one contacted them "for the purpose of appraising this property" and that neither of them "accompan[ied] any appraiser when he appraised the property." Appellant argues that the City's failure to give it "an opportunity to accompany the appraiser" voids the entire proceedings. We disagree. The provisions of Real Property Article, § 12-207 (c), are not contained in

Baltimore City's quick take statute. Assuming without deciding that they are, nevertheless, applicable to the City's quick take proceedings,[1] we hold that § 12-207 (c) is directory only and that failure to comply with the particular "policy" set forth therein does not vitiate the entire proceedings — at least where, as in the instant case, no prejudice resulting from such failure has been shown.

(2)

Appellant next contends that the appraisals filed with the quick take petition supporting the amount of money deposited into court as the City's estimate of the fair value of the property were "stale". The quick take statute requires that the amount deposited in court as the City's "estimate" of the fair value of the property to be acquired "be substantiated by the Affidavits of two qualified appraisers, attached to said Petition." In this case, the affidavits of one appraiser, stating his opinion of value, were dated September 13, 1977, as to all five lots. The affidavits of a second appraiser, stating his opinion, were dated August 26, 1977, as to four of the lots, and February 2, 1978, as to one of the lots. As already noted, the quick take petition was filed March 14, 1978. Appellant argues that because the amount deposited did not represent the value of the property "at the time of the taking", the court had no right to vest *title* in the City by its order of March 14, 1978.[2] The argument is without merit. In *Dunne v. State,* 162 Md. 274, 284, 159 A. 751, 755 (1932), the Court of Appeals said:

"... Neither the State nor any agency thereof can exercise the right of eminent domain except by

1. Although § 12-101 of Title 12, Eminent Domain, of the Real Property Article provides that, "All proceedings for the acquisition of private property for public use by condemnation are governed by the provisions of this title and Subtitle U of the Maryland Rules," § 12-101 also provides that, "... [T]his title does not prevent ... Baltimore City from using the procedure set forth in §§ 674 through 685, inclusive [now § 21-16] of the Charter and Public Local Laws of Baltimore City." It is at least arguable, therefore, that the particular "policy" involved here (§ 12-207 (c)) does not apply at all when the City elects to invoke its quick take powers.

2. We note that the appellant does not argue that the staleness of the appraisals invalidates the City's right to immediate *possession.*

condemnation proceedings wherein compensation is determined, and that compensation paid, tendered, *or secured* to the property owner; and *title* to such property *sought* to be taken does not pass from the owner until such payment be made or *secured."* (Emphasis added).

The City's quick take statute *does* secure to the property owner just compensation. The payment into court of the City's estimate of fair value is specifically provided by the statute to be "without prejudice to either party and shall not be construed to prevent either party from requiring a subsequent trial to determine the value of the property." *See* subsection (g) of the quick take statute. As already noted, the March 14th order vesting title in the City specifically so provided. Moreover, although it would have been better to have more current appraisals, we think the appraisals used here, on their face, were not so old as to require a holding invalidating the March 14th order.

### (3)

The appellant next contends that the City's quick take petition was not filed "under oath" as required by the statute. Subsection (a) of the statute requires the petition to be "under oath stating that it is necessary for the City to have immediate possession of or immediate title to, and possession of said property, and the reasons therefore [sic]."

In this case, paragraph 2 of the quick take petition alleged that "it is necessary for Petitioner to acquire immediate possession of and title to said property . . . as appears from the *affidavit* of Jerome M. Katz, Land Acquisition Officer, Department of Housing and Community Development, attached hereto and prayed to be taken as a part hereof." (Emphasis added). *Two* forms of paper writing were attached to the petition, both of them signed by Mr. Katz and a Notary Public. The first paper was indeed in the form of an "affidavit" rather than an "oath", for in it Mr. Katz "made oath that the matters and facts set forth in the . . . [Petition]

are true to the best of his information, knowledge and belief."
*See* Md. Rule 5 (c). In the second form attached to the petition,
however, Mr. Katz "made oath in due form of law that it is
necessary for the . . . [City] to have immediate possession and
title . . . of the property . . . to expedite the development of
highway expansion under Urban Renewal in the Community
Development Block Grant — CDBG-I Orchard-Biddle Site"
and that "[i]n order to make the Urban Renewal Plan feasible,
the within property must be in possession of the . . . [City] at
the earliest possible time to allow for the commencement of
highway expansion." The appellant does not attack this
second attachment to the petition — indeed does not mention
it in its brief in connection with his "no oath" argument.
Under the circumstances, we reject the argument as devoid
of merit. The fact that the first "affidavit" was not technically
within the definition of an "oath" does not require a holding
that the petition, together with the second attachment, does
not comply with the statute. See *Segall v. City of Baltimore,*
273 Md. 647, 331 A.2d 298 (1975).

## II

In addition to the alleged procedural defects in the
proceedings already noted, the appellant argues that "the
lower court lacked power to order that title and possession
vest in the condemnor."

## (1)

Appellant contends that "where the condemnor files a
timely answer to the petition for immediate possession and
title, the lower court may not award title or possession to the
condemnor prior to a judicial hearing."

Subsections (c) and (d) of the quick take statute provide:

> "(c) In cases where the City files a Petition for
> immediate taking of title and possession to the said
> property in fee simple absolute or such lesser estate
> or interest as is specified in the Petition, *possession
> and title* thereto shall irrevocably vest in the Mayor

and City Council of Baltimore ten days after personal service of the petition upon each and every defendant *unless* the Defendants or any of them shall file an answer to the Petition within the said ten day period alleging that the City does not have the right or power to condemn *title* to the property. In the event the defendants or any of them should file an answer, the court shall schedule a hearing within fifteen days of the date of the filing of an answer, which hearing shall be only for the purpose of contesting the right or power of the City to condemn title to the property. The trial court shall render its decision within fifteen days from the final day of said hearing. The City or the defendants or any of them shall have an immediate right of appeal to the Court of Appeals of Maryland from the decision of the trial court.

(d) If it appears from a Petition for Immediate Possession, with or without supporting affidavits or sworn testimony, that the public interest requires the City to have *immediate possession* of said property, the court shall, within not more than seven days after the filing of said Petition, pass an order, either ex parte or after a hearing, directing that the City may take *possession* of said property after the expiration of thirty days from the filing of said petition or earlier, in the court's discretion. Upon passing such an order, the court may direct the City to give such notice of said order to the defendants as the court may deem proper, but the court's requirement of notice shall not extend the time within which the City may take possession of said property." (Emphasis added).

In the present case, as already noted, the quick take order of March 14, 1978, in addition to vesting the City "with possession" of the property also provided that "title . . . shall vest in the . . . [City] ten (10) days after personal service. . . ." This latter portion concerning vesting of title was technically erroneous, for the power to vest the City with *title* ten days

after service would only exist if the defendant, "within the said ten day period," failed to file an answer to the petition "alleging that the City does not have the right or power to condemn *title* to the property." (Emphasis added). The order concerning title should have gone further and provided for this contingency. The fact that it did not so provide, however, resulted in no harm to the appellant. This is so because the effect of the appellant's timely answer challenging the City's "right or power to condemn title" was to suspend, by operation of law, the vesting of title until the issue was ultimately decided after a hearing.

The fact that appellant filed a timely answer to the quick take petition did not, however, affect the validity of that portion of the March 14th order vesting *possession* in the City. When subsections (c) and (d), quoted above, are read together, it is clear that the filing of a challenge to "the right or power to condemn *title*" does not stay the effect of a prior order for immediate possession.

Following the hearing on the appellant's challenge to the March 14th quick take order, the court, on February 2, 1979, filed its "Ruling by the Court":

"Upon review of the Court file, consideration of testimony taken at the hearing of January 19, 1979, and Memoranda of Law submitted by counsel, the Court has concluded that the Mayor and City Council of Baltimore complied with all the requirements of the applicable law pertaining to the City's Petition for Condemnation and Petition for Immediate Possession and Title of the Defendant's properties in question.

Furthermore, in the exercising of the condemning authority by the City, pursuant to the applicable law, the Court is of the view that there existed a necessity for the acquisition and immediate possession of the subject properties in their entirety, even although approximately sixty percent (60%) of the frontage of these properties was needed for the widening of Saratoga Street. The widening of Saratoga Street is of necessity and its use is consistent with industrial

purposes. Also, under the law, the City has the authority to retain excess property in urban renewal areas and to use said property for purposes consistent with the overall Urban Renewal Plan and for future industrial expansion.

Consequently, the Defendant's Motion to Vacate Order for Immediate Possession and Vesting of Title is hereby DENIED."

While we find no error in the first two paragraphs of this order, we will modify the last paragraph and, as modified, affirm it. Without such modification, the effect of the February 2nd order is to leave standing that portion of the March 14th order that vested title in the City ten days after service upon the appellant of the quick take petition and the March 14th order. As we have seen, such an order was technically erroneous. As modified, the last paragraph of the February 2nd order will read as follows:

"Consequently, the Defendant's Motion to Vacate that portion of the order, entered in these proceedings on March 14, 1978, vesting the Mayor and City Council of Baltimore with *possession* is DENIED. It is Further Ordered that the portion of the aforesaid order entered on March 14, 1978, vesting *title* in the Mayor and City Council of Baltimore ten (10) days after service of the Petition for Immediate Possession, is hereby VACATED; and it is Further Ordered that title to the Defendant's property shall vest in the Mayor and City Council of Baltimore on this 2nd day of February 1979."

(2)

The appellant further challenges the quick take order on the grounds that (a) there was no finding of "public interest" by the court; (b) that the Baltimore City Charter prohibits the City from acquiring property by eminent domain for an industrial use [not raised below]; (c) it was not necessary for the City to acquire all the property it sought; and (d)

Baltimore City Ordinance No. 32 did not authorize the City to acquire the property for street widening purposes. We have carefully considered all of these contentions and on the record before us find them without merit.

We note that in *City of Baltimore v. Kelso Corporation, et al.,* 281 Md. 514, 380 A.2d 216 (1977), the Court of Appeals stated in footnote 3 of its opinion at 281 Md. page 518, that

> "To the extent that Free State Realty v. City of Balto., 279 Md. 550, 557-60, 369 A.2d 1030, 1034-35 (1977), may be read to suggest that use of quick-take procedures by Baltimore City can be challenged on grounds other than facial non-compliance with the statutorily mandated requirements or lack of power to condemn, such a suggestion was not intended and we reject it."

In the case before us we find that on its face the quick take procedure employed by the City shows compliance with the statutorily mandated requirements and that the appellant has failed to show that the City lacked the power or right to condemn its property. *See Master Royalties v. Baltimore City,* 235 Md. 74, 200 A.2d 652 (1964). The order appealed from, as herein modified, will therefore be affirmed.

> *As modified by this opinion, the order of the Court of Common Pleas, entered on February 2, 1979, is affirmed; costs to be paid one-half by appellant and one-half by appellee.*