WATTS, J.,
dissenting, in which BATTAGLIA, J., joins.
Respectfully, I dissent. Although the Majority opinion is well written, I would hold that Md.Code Ann., Tax-Prop. *474 (1985, 2012 Repl.Vol.) (“TP”) § 8-104(b), by its plain language, does not permit the Maryland Tax Court (“the Tax Court”) to take into consideration sales of comparable properties that occur after the date of finality in determining the value of a property on the date of finality.
Because this case turns on statutory interpretation, I reiterate the pertinent principles of statutory interpretation as set forth in Hailes v. State, 442 Md. 488, 495-96, 113 A.3d 608, 612 (2015):
In interpreting a statute, a court first considers the statute’s language, which the court applies where the statute’s language is unambiguous and clearly consistent with the statute’s apparent purpose. Where the statute’s language is ambiguous or not clearly consistent with the statute’s apparent purpose, the court searches for the General Assembly’s intent in other indicia, including the history of the statute or other relevant sources intrinsic and extrinsic to the legislative process, in light of: (1) the structure of the statute; (2) how the statute relates to other laws; (3) the statute’s general purpose; and (4) the relative rationality and legal effect of various competing constructions.
(Citations, internal quotation marks, and brackets omitted).
Examining the plain language of TP § 8 — 104(b), I would conclude that nothing in TP § 8-104(b) permits the Tax Court to take into consideration events occurring after the date of finality in determining the value of a property on the date of finality. TP § 8 — 104(b)(1) provides that, “[notwithstanding a revaluation under subsection (c) of this section, the [State] Department [of Assessments and Taxation (“SDAT”) ] or supervisor [of assessments for a county] shall value all real property once in every 3-year cycle based on an exterior physical inspection of the real property.” TP § 8-102(a) provides that, with an exception not relevant here, “the value of real property shall be its value on the date of finality.” (Emphasis added). TP § 8-104(b)(2), in turn, states: “The date of finality for real property that is valued under this subsection is the January 1 immediately before the 1st taxable *475 year[1] to which the assessment based on the new value is applicable.” In other words, pursuant to TP § 8-102(a), the value of a property “shall be its value on the date of finality[,]” which, under TP § 8 — 104(b)(2), is January 1 of the relevant tax year. Significantly, TP § 8-104(b)(2) makes no mention whatsoever of consideration of events occurring after the date of finality as being relevant to determining the value of a property on the date of finality. Rather, the date of finality is the date of finality — ie., January 1 of the relevant tax year— nothing more and nothing less.
TP § 8-104(b)(2)’s plain language comports with the commonsense understanding of the term “finality.” Black’s Law Dictionary defines “finality” as “[t]he quality of being complete and unchangeable.” Finality, Black’s Law Dictionary (10th ed.2014). Similarly, Merriam-Webster defines “finality” as “the quality or state of being final or finished and not able to be changed” and as “the character or condition of being final, settled, irrevocable, or eomplete[.]” Finality, Merriam-Webster (2015), http://www.merriam-webster.com/dictionary/ finality [http://perma.co/3V8H-MYD7]. Simply put, something has finality when it is complete, final, and finished. Thus, the date of finality for purposes of real property assessment is January 1 of the relevant tax year; ie., that is the date when the assessment is to be complete, final, and finished, and the value of a property must be the value that exists on January 1.
TP § 8-104(b)(2)’s plain language and meaning simply does not allow for consideration of events occurring after January 1 for a determination of what a property’s value is as of January 1. And this reading of TP § 8-104(b)(2) is entirely logical. If something is to be final as of a certain date, that does not mean that something is somewhat final as of that date and that events that occur months after that date can somehow be used to justify a different result or to change what otherwise *476 is meant to be final. Take, for instance, the example of a student’s homework assignment. The teacher states that the homework assignment must be finished as of January 1 and that her grade will be finalized as of that same date, January 1. The student finishes the homework assignment and turns it in on January 1. The teacher grades the homework assignment and returns it to the student. The student believes that the homework assignment grade is final and thinks no more of it. Months later, however, after having graded other assignments from other students, the teacher adjusts the grade given to the student on the homework assignment due on January 1, lowering the grade. Obviously, the student thinks such a result is unfair because the grade given after she turned in the homework assignment has now been adjusted against her, based on events that occurred after that assignment, namely, other students having turned in other assignments. Such a result flies in the face of the ordinary meaning of the term “final.”
Moreover, in addition to the circumstance that TP § 8-104(b)(2)’s plain language and meaning do not provide for consideration of events occurring after January 1 in determining what a property’s value is as of January 1, TP §8-104(b)(2)’s legislative history is notably silent on the matter. Indeed, the Majority fails to identify any legislative history supporting its interpretation of TP § 8-104(b)(2). Rather, the Majority simply states: “Sales of comparable properties occurring reasonably soon after the date of finality are relevant to an accurate assessment of the valuation of property as of that date; there is, therefore, no good reason why such probative evidence should not be considered.” Maj. Op. at 467, 135 A.3d at 835 (citations omitted).[2] But such reasoning is circular, renders the term “date of finality” essentially meaningless, and adds to TP § 8-104(b)(2) language that is *477 not there, thus violating one of the cardinal rules of statutory construction. See Montgomery Cnty. v. Phillips, 445 Md. 55, 62, 124 A.3d 188, 192 (2015) (“[W]e neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words [that] the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute’s meaning.” (Citation and brackets omitted)); id. at 63, 124 A.3d at 192 (“In construing a statute, we avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.” (Citation and brackets omitted)); Doe v. Montgomery Cnty. Bd. of Elections, 406 Md. 697, 712, 962 A.2d 342, 351 (2008) (“We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence^] or phrase is rendered surplusage, superfluous, meaningless[,] or nugatory.” (Citations and internal quotation marks omitted)). In short, in my view, the Majority adds something to TP § 8-104(b)(2) that is not there where the General Assembly has given no indication that it intended to permit the Tax Court to consider events occurring after the date of finality in determining a property’s value on the date of finality. And there is a good reason for not considering sales occurring after the date of finality— namely, fairness to the taxpayer.
The Majority also holds that, because the Tax Court reviews appeals de novo, the Tax Court “had the responsibility to decide the relevance of the evidence presented, discard that which the court deemed irrelevant, and accord to that which is relevant the weight [that] it deserved”; i.e., the Tax Court was permitted to consider the sales of comparable properties occurring after the date of finality. Maj. Op. at 468, 135 A.3d at 841-42. However, such a holding turns the concept of de novo review on its head. To be sure, “[a]n appeal before the Tax Court shall be heard de novo and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury.” Md.Code Ann., Tax-Gen. (1988, 2010 Repl. Vol.) § 13-523. However, the power of the Tax Court to hear appeals de novo does not permit the Tax Court to override the *478 plain language of TP § 8 — 104(b)(2) and take into consideration evidence that occurs after the date of finality in contravention of TP § 8-104(b)(2). Indeed, the Majority’s reasoning as to the Tax Court’s power to hear appeals de novo is a red herring and has no correlation whatsoever with the Tax Court’s authority as it relates to statutory interpretation. See, e.g., Phillips, 445 Md. at 61-62, 124 A.3d at 191-92 (When an appellate court reviews decisions of the Tax Court, the appellate court is “under no statutory constraints in reversing a Tax Court order [that] is premised solely upon an erroneous conclusion of law____A reviewing court will not accord deference to the [T]ax [C]ourt’s decision on a question of law[.]” (Citations and internal quotation marks omitted)).
Furthermore, I disagree with the Majority’s use of condemnation cases to justify exceeding the plain language of TP § 8-104(b)(2). Specifically, I disagree with the Majority’s reading of Hance v. State Rds. Comm’n of Md., 221 Md. 164, 156 A.2d 644 (1959) as “confirm[ing] that evidence of sales of comparable properties occurring after an assessment date may be relevant to the property’s fair market value as of the date of assessment and therefore are admissible.” Maj. Op. at 468-69, 135 A.3d at 842. In my view, Hance, 221 Md. at 167, 156 A.2d at 644, is distinguishable and not persuasive in the context of this property assessment case because, simply put, it is a condemnation case. In Hance, id. at 175, 156 A.2d at 650, we held that, in the context of a condemnation case, comparable sales that “tak[e] place subsequent to the taking” may be considered in determining the market value of the property as of the date of the taking. That the most recent information about the values of comparable properties is admissible in condemnation cases is not dispositive of the issue in this case.
Importantly, the statutes concerning eminent domain do not provide that the valuation of the property taken must be done by the date of finality. Indeed, Md.Code Ann., Real Prop. (1974, 2015 Repl.Vol.) § 12-103 expressly provides: “Unless an applicable statute specifies a different time as of which the value is to be determined, the value of the property sought to be condemned and of any adjacent property of the defendant *479 claimed to be affected by the taking shall be determined as of the date of the taking, if taking has occurred, or as of the date of trial, if taking has not occurred.” Nonetheless, this Court has held that the “valuation date is not immutable” “because the date of valuation set by statute cannot be used to deprive a property owner of the just compensation [that the owner] is entitled to receive^]” City of Baltimore v. Kelso Corp., 281 Md. 514, 519, 380 A.2d 216, 219 (1977). Thus, in Kelso Corp., id. at 519, 380 A.2d at 219, we held that, if the property owner could “show that the City through fraud manipulated the date of valuation to [the owner’s] detriment, the court can remedy the injustice by ignoring the statutory date and allowing the jury to consider such factors as will allow the property owner to receive just compensation free of any effect of the fraudulent device.”
In any event, in my view, the distinction between the purposes of condemnation and routine property assessment renders Hance and similar condemnation cases inapplicable. Condemnation occurs where the government takes a property through the power of eminent domain. See Mayor and City Council of Balt. City v. Valsamaki, 397 Md. 222, 241, 916 A.2d 324, 335 (2007) (“Condemnation is a function of the State’s power of eminent domain[, which] is defined as the inherent power of a governmental entity to take privately owned property, especially] land, and convert it to public use, subject to reasonable compensation for the taking.” (Citation, brackets, and internal quotation marks omitted)). The goal in a condemnation case, however, is to try to give the property owner every opportunity to establish the value of the property that is most favorable to the property owner, i.e., to establish “reasonable compensation for the taking.” See id. at 243, 916 A.2d at 337 (“The Maryland Constitution provides that: ‘The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation.’ ” (Citations omitted)). By contrast, in the context of property assessment, the purpose of property assess *480 ment is to assess property based on the fair market value of a property at a particular time. Indeed, SDAT or local authorities are to assess property taxes based on the “full cash value of property!,]” TP § 1-101(qq), which is the equivalent of the fair market value of the property. And, pursuant to TP § 8-104(b)(2)’s plain language, the fair market value is assessed as of the date of finality.
Significantly, unlike in condemnation cases, in the context of property assessment, TP § 8-102(a) and TP § 8 — 104(b)(2) expressly provide that the value of real property shall be the value as on the date of finality, which is January 1 of the relevant tax year. In other words, property assessment relies on the date of “finality,” not the date of taking, the date of trial, or some other appropriate date. Through use of the term “date of finality,” the General Assembly clearly expressed an intent that property owners have finality, ie., certainty about the date on which the value of the property would be determined. In other words, a property owner would know that, as of January 1 of the relevant tax year, his or her property has a specific value for tax assessment purposes. The property owner would then have the ability to rely on, or at least know, what the evidence would consist of, should the property owner choose to appeal the Board’s decision or initial valuation.
By holding as the Majority does, however, property owners are placed in the difficult position of spinning the wheel and gambling on appeal, as property values could go up or down depending on “the sale of comparable properties occurring within a reasonable time after the date of finality!.]” Maj. Op. at 473, 135 A.3d at 839. In my view, the Majority’s holding will chill property owners’ willingness and ability to appeal the Board’s decision or initial valuation because the property owners will not know what the valuation is based on or what evidence will be used from after the date of finality. In some instances, a property owner will accept whatever the initial valuation is, rather than risk an appeal that could result in a higher valuation in light of the sale of comparable properties occurring after the date of finality. Presumably, it is left to a *481 property owner’s ability to read the Majority’s opinion to assess the risk of an appeal. The Majority’s holding places the onus on the property owner to locate sales of comparable properties “occurring reasonably soon after the date of finality!,]” and then accurately predict which sales of comparable properties SDAT or the Supervisor will utilize in reassessing the value of the property owner’s property and which sales the Tax Court will find “relevant!.]” Maj. Op. at 467, 135 A.3d at 835. Additionally, what constitutes “occurring reasonably soon after the date of finality” is not defined by the Majority and would be subject to varying interpretations by SDAT and the Tax Court. This could not have been the General Assembly’s intent in enacting TP § 8-104(b)(2).
Moreover, I want to emphasize that the Notice of Assessment, dated December 28, 2010, issued by the Supervisor of Assessments for Montgomery County to Petitioner stated that Petitioner’s property would be assessed at a value of $2,130,000, which represented “the new market value effective January 1, 2011.” The Notice of Assessment expressly stated that the “new market value is based upon market data available prior to this date.” In other words, everything that was provided to Petitioner explicitly stated that the assessment of her property was based upon market data available prior to the date of finality, ie,, January 1, and that the assessment was effective as of the date of finality. There was no other notice that was provided to Petitioner that stated otherwise, and there was certainly nothing that was provided to Petitioner stating that the Supervisor could later justify the assessment using market data occurring after the date of finality.
In sum, I would hold that TP § 8-104(b)(2) does not permit the Tax Court to take into consideration sales of comparable properties that occur after the date of finality in determining the value of a property on the date of finality, as such a holding is contrary to TP § 8-104(b)(2)’s plain language, common sense, and the goal of giving property owners finality with respect to property assessments. Accordingly, for the above reasons, respectfully, I dissent.
Judge BATTAGLIA has authorized me to state that she joins in this opinion.

. TP § 1-101(oo) defines "taxable year” as "July 1 to June 30, both inclusive, for which the State, each county, municipal corporation, and taxing district of the State computes, imposes, and collects property tax.”

. The Majority also relies on jurisprudence from the 1940s, 1970s, and 1980s, from other jurisdictions. See Maj. Op. at 468-70, 135 A.3d at 836-37. The age and sparsity of the case law alone from the other jurisdictions calls into question its persuasiveness in interpreting the Maryland statute, TP § 8 — 104(b)(2).